# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

CHAMBERS OF
SUSAN K. GAUVEY
U.S. MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
MDD_skgchambers@mdd.uscourts.gov
(410) 962-4953
(410) 962-2985 - Fax

March 28, 2013

Marcia Ellen Anderson, Esq.
Law Office of Marcia E. Anderson, LLC
P.O. Box 908
Mount Airy, MD 21771

Alex S. Gordon, Esq.
Office of the United States Attorney
36 S. Charles Street, Fourth Floor
Baltimore, MD 21201

      Re:  Sharon Faye Bryant v. Michael J. Astrue, Commissioner,
           Social Security, Civil Action No. 1:11-cv-03083-SKG

Dear Counsel:

    Plaintiff, Sharon Faye Bryant, by her attorney, Marcia E. Anderson, filed this action seeking judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), who denied her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under sections 205(g) and 1631(c)(3) of the Social Security Act ("the Act").  This case has been referred to the undersigned magistrate judge by consent of the parties pursuant to 28 U.S.C. § 636(c) and Local Rule 301.  No hearing is necessary. Local Rule 105.6.

    Currently pending before the Court are cross motions for summary judgment and plaintiff's request for remand in the

alternative.  For the reasons that follow, the Court hereby DENIES plaintiff's motion for summary judgment, GRANTS defendant's motion for summary judgment, and AFFIRMS the decision of the Commissioner.

## I.    Procedural History

On December 8, 2006, plaintiff applied for DIB and SSI benefits, alleging that she had become unable to work beginning June 2, 2006 due to mental illness. (R. 10, 11).

Plaintiff's applications for DIB and SSI were denied initially, on March 16, 2007, and upon reconsideration on July 16, 2007. (R. 10).  On August 15, 2007, the plaintiff filed a request for a hearing by an Administrative Law Judge ("ALJ"). (R. 10).  On August 29, 2008, ALJ Judith A. Showalter held a video hearing. (R. 10). On March 4, 2009, the ALJ issued an unfavorable written decision that plaintiff was not disabled within the meaning of the Act. (R. 22).

The Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the agency. (R.1).  Plaintiff now seeks review of that decision pursuant to 42 U.S.C. § 405(g).

## II.  Factual History

The Court has reviewed the Commissioner's Statement of Facts and, finding that it accurately represents the record in all material respects, hereby adopts it. (ECF 20-2, 2-10).

## III. ALJ Findings

In reviewing a claimant's eligibility for DIB and SSI, an ALJ must consider all of the evidence in the record and follow the sequential five-step analysis set forth in the regulations to determine whether the claimant is disabled as defined by the Act.  20 C.F.R § 416.920(a).[1]  If the agency can make a disability determination at any point in the sequential analysis, it does not review the claim further.  20 C.F.R. § 404.1520(a)(4).  After proceeding through each of the required steps, the ALJ in this case concluded that Ms. Bryant was not disabled as defined by the Act.  (R. 22).

At the first step, the claimant must prove that he or she is not engaged in "substantial gainful activity."[2]  20 C.F.R. § 416.920(a)(4)(i).  If the ALJ finds that the claimant is engaged in "substantial gainful activity," he or she will not be considered disabled.  Id.  Here, the ALJ found that Ms. Bryant has not engaged in substantial gainful activity since June 2, 2006. (R. 12).

---

[1] Disability is defined in the Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 416(i)(1)(A).

[2] Substantial gainful activity is defined as "work activity that is both substantial and gainful."  20 C.F.R. § 416.972.  Work activity is substantial if it involves doing significant physical or mental activities and even if it is part time or if plaintiff is doing less, being paid less, or has fewer responsibilities than when she worked before.  20 C.F.R. § 416.972(b).  Substantial gainful activity does not include activities such as household tasks, taking care of oneself, social programs, or therapy.  20 C.F.R. § 416.972(c).

At the second step, the ALJ must determine whether the claimant has a severe, medically determinable impairment or a combination of impairments that limit her ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c); see also 20 C.F.R. §§ 404.1521, 416.921.  In addition, there is a durational requirement that the claimant's impairment last or be expected to last for at least 12 months.  20 C.F.R. § 416.909.  Here, the ALJ found that Ms. Bryant suffered from several severe impairments. (R. 12).  She found that Ms. Bryant suffers from bipolar disorder, post traumatic stress disorder, generalized anxiety disorder, and substance abuse disorder. (R. 12). The ALJ found that Ms. Bryant's thyroid problem is non-severe because it is controlled with medication and causes no major limitations on her ability to work. (R. 14).

At the third step, the ALJ considers whether the claimant's impairments, either individually or in combination, meet or equal an impairment enumerated in the "Listing of Impairments" in 20 C.F.R. § 404, Subpart P, Appendix 1.  20 C.F.R. § 416.920(a)(4)(iii).  If one of the Listings is met, disability will be found without consideration of age, education, or work experience.  20 C.F.R. § § 404.1520(d), 416.920(d).  Here, the ALJ found that Ms. Bettis' does not have an impairment or combination of impairments that meet or equal an impairment enumerated in the "Listing of Impairments."  (R. 14).

More specifically, the ALJ reviewed the Listings 9.00 (endocrine disorders), 12.04 (affective disorders), 12.06 (anxiety-related disorders), 12.08 (personality disorders), and 12.09 (substance abuse disorders). (R. 14). The ALJ found that Ms. Bryant did not meet or medically equal Listing 9.00. (R. 14). Additionally, the ALJ found that, considered singly and in combination, Ms. Bryant did not meet or medically equal the criteria of Listings 12.04, 12.06, 12.08, or 12.09. (R. 14).

An endocrine disorder causes hormonal imbalance. 20 C.F.R. § 404, Subpart P, Appendix 1. In order to meet or medically equal the listing for an endocrine disorder, the ALJ evaluates the effects of the endocrine disorder under the Listings for other body systems. 20 C.F.R. § 404, Subpart P, Appendix 1. The ALJ found that Ms. Bryant did not meet any of the endocrine listings because her condition is controlled with medication and is non-severe. (R. 14).

In order to meet Listing 12.04 for affective disorders, the claimant must either meet the requirements in both "paragraph A" and "paragraph B" or in "paragraph C" alone. 20 C.F.R. § 404, Subpart P, Appendix 1. To satisfy "paragraph A" criteria, the claimant must show medically documented persistence of: depressive syndrome, manic syndrome, or bipolar syndrome. Id. "Paragraph B" requires that the "paragraph A" symptoms result in at least two of the following: marked restriction of activities

of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace, or repeated episodes of decompensation of extended duration.  Id.  Where a "marked" level is required, it means more than moderate but less than extreme.  Id.  To satisfy "paragraph C" under Listing 12.04, the claimant must show a medically documented history of the affective disorder of at least two years that has caused more than minimal limitation of ability to do basic work activities, with symptoms attenuated by treatment.  20 C.F.R. § 404, Subpart P, Appendix 1.  In addition, the claimant must show at least one of the following to satisfy "paragraph C": repeated episodes of decompensation of extended duration, a disease process that indicates that even a minimal increase in mental demands or change in environment would be predicted to cause the individual to decompensate, or a current history of an inability to function outside of a highly supportive living arrangement.  Id.

In order to meet Listing 12.06 for anxiety-related disorders, the claimant must either meet "paragraph A" and "paragraph B" requirements or "paragraph A" and "paragraph C" requirements. 20 C.F.R. § 404, Subpart P, Appendix 1.  In order to satisfy "paragraph A," the claimant must show either: (1) generalized persistent anxiety and at least one of the following: motor tension, autonomic hyperactivity, apprehensive

expectation, or vigilance and scanning; (2) a persistent and irrational fear of a specific object or situation accompanied by avoidance; (3) recurrent severe panic attacks that occur at least once a week; (4) recurrent obsessions or compulsions; or (5) recurrent and intrusive memories of traumatic experience which result in marked distress. 20 C.F.R. § 404, Subpart P, Appendix 1. The "paragraph B" requirements are identical under Listings 12.04 and 12.06. 20 C.F.R. § 404, Subpart P, Appendix 1. To satisfy "paragraph C," the claimant must show that the "paragraph A" requirements result in a complete inability to function independently outside of his or her home. 20 C.F.R. § 404, Subpart P, Appendix 1.

In order to meet Listing 12.08 for personality disorders, the claimant must meet both "paragraph A" and "paragraph B" requirements. 20 C.F.R. § 404, Subpart P, Appendix 1. "Paragraph A" requires that the claimant have deeply ingrained and maladaptive patterns of behavior that include at least one of the following: (1) seclusiveness or autistic thinking; (2) pathologically inappropriate suspiciousness or hostility; (3) oddities of thought, perception, speech and behavior; (4) persistent disturbances of mood or affect; (5) pathological dependence, passivity, or aggressivity; or (6) intense and unstable interpersonal relationships and impulsive and damaging behaviors. 20 C.F.R. § 404, Subpart P, Appendix 1.  The

"paragraph B" requirements are identical under Listings 12.04
and 12.08.  20 C.F.R. § 404, Subpart P, Appendix 1.

In order to meet Listing 12.09 for substance addiction
disorders, the claimant must show behavioral or physical changes
that are associated with regular use of substances that affect
the central nervous system.  20 C.F.R. § 404, Subpart P,
Appendix 1.  In order to reach the required level of severity
associated with substance addiction, the claimant must meet the
requirements of any of the following disorders: organic mental
disorder (to be evaluated under Listing 12.02); depressive
syndrome (to be evaluated under Listing 12.04); anxiety disorder
(to be evaluated under Listing 12.06); personality disorder (to
be evaluated under Listing 12.08); peripheral neuropathy (to be
evaluated under Listing 11.14); liver damage (to be evaluated
under Listing 5.05); gastritis (to be evaluated under Listing
5.00); pancreatitis (to be evaluated under Listing 5.08); or
seizures (to be evaluated under Listings 11.02 or 11.03). Id.

The ALJ determined that the claimant did not meet
"paragraph B" criteria. (R. 14-16).  First, the ALJ found that
Ms. Bryant has moderate restriction in activities of daily
living based on her ability to take care of her personal needs
and the fact that she lives with her parents. (R. 15).  Second,
the ALJ found that Ms. Bryant has moderate difficulties in
social functioning due to her difficulties interacting with

8

others, (though she generally gets along with her family), and ability to do short errands, go to the store and doctors' appointments. (R. 15).  Third, the ALJ found that Ms. Bryant has moderate difficulties with concentration, persistence or pace due to her difficulties focusing and concentrating and her ability to watch the news and read. (R. 15-16).  Finally, the ALJ found that Ms. Bryant experienced one to two episodes of decompensation, each of extended duration due to a hospitalization for suicidal ideation and alcohol abuse. (R. 15).  Therefore, the ALJ determined that Ms. Bryant did not satisfy "paragraph B" requirements. (R. 15).

The ALJ also concluded that Ms. Bryant did not meet the "paragraph C" requirements. (R. 16).  The ALJ determined that, for Listing 12.04, there was no evidence that established the presence of: repeated episodes of decompensation of extended duration, a disease process that would cause Ms. Bryant to decompensate in response to even minimal changes in her environment or mental demands, or a current history of at least one year of an inability to function outside a highly supportive living arrangement with an indication of a continued need for such an arrangement. (R. 16).  Additionally, the ALJ determined that, as to Listing 12.06 for anxiety-related disorders, Ms. Bryant did not meet "paragraph C" requirements because the

9

evidence did not show that Ms. Bryant's anxiety has led to an inability to function outside of her home. (R. 16).

Before an ALJ advances to the fourth step of the sequential analysis, she must assess the claimant's "residual functional capacity" ("RFC"), which is then used at the fourth and fifth steps of the analysis. 20 C.F.R. § 404.1520(e). RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. Social Security Ruling (SSR) 96-8p. The ALJ must consider even those impairments that are not "severe." 20 C.F.R. § 404.1545(a)(2).

In determining a claimant's RFC, an ALJ evaluates the claimant's subjective symptoms (e.g., allegations of pain) using a two-part test. Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996); 20 C.F.R. § 404.1529. First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual alleged symptoms. 20 C.F.R. § 404.1529(b). Once the claimant makes that threshold showing, the ALJ must evaluate the extent to which the symptoms limit the claimant's capacity to work. 20 C.F.R. § 404.1529(c)(1). At this second stage, the ALJ must consider all the available evidence, including medical history, objective medical evidence, and statements by the claimant. 20 C.F.R. § 404.1529(c). The ALJ must assess the

credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical evidence.  SSR 96-7p. To assess credibility, the ALJ should consider factors such as the claimant's daily activities, treatments she has received for her symptoms, medications, and any other factors contributing to functional limitations.  <u>Id.</u>

First, the ALJ determined that her medically determinable impairments could reasonably be expected to cause the alleged symptoms. (R. 18).  The ALJ so found due to Ms. Bryant's bipolar and anxiety disorders. (R. 17-18).  Second, the ALJ determined that Ms. Bryant's statements concerning the intensity, persistence, and limiting effects of her symptoms are not entirely credible.  (R. 18).  The ALJ so found due to the fact that Ms. Bryant's statements are inconsistent with the evidence in the record.  (R. 18).

Here, the ALJ determined that Ms. Bryant has the RFC to perform a full range of work at all exertional levels but with non-exertional limitations. (R. 16). Ms. Bryant requires: simple, unskilled work that had only occasional contact with co-workers and the general public, work that is essentially isolated with only occasional supervision, work that is not at a production pace (defined as work that is not paid by the piece or on an assembly line), and work that is low stress (defined as

work with only occasional changes in the work setting and work
where Ms. Bryant would only occasionally have to make decisions
or use judgment).  (R. 16-17).

    At the fourth step of the sequential analysis, the ALJ must
consider whether the claimant retains the RFC necessary to
perform past relevant work.  20 C.F.R. §§ 404.1520(e),
416.920(e).  The ALJ concluded that, because her past relevant
work was all skilled in nature, Ms. Bryant cannot perform any of
her past relevant work as a food service manager, hotel manager,
or communications specialist.  (R. 20).

    Where, as here, the claimant is unable to resume her past
relevant work, the ALJ proceeds to the fifth and final step of
the sequential analysis.  This step requires consideration of
whether, in light of vocational factors such as age, education,
work experience, and RFC, the claimant is capable of other work
in the national economy.  20 C.F.R. §§ 404.1520(g), 416.920(g).
At this step, the burden of proof shifts to the agency to
establish that the claimant retains the RFC to engage in an
alternative job which exists in the national economy.  McLain v.
Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Wilson v.
Califano, 617 F.2d 1050, 1053 (4th Cir. 1980).  The agency must
prove both the claimant's capacity to perform the job and that
the job is available.  Grant v. Schweiker, 699 F.2d 189, 191
(4th Cir. 1983).  Before the agency may conclude that the

claimant can perform alternative skilled or semi-skilled work, it must show that she possesses skills that are transferable to those alternative positions or that no such transferable skills are necessary. McLain, 715 F.2d at 869.

In this case, the ALJ found that although Ms. Bryant is unable to perform her past relevant work, given her age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that she can perform. (R. 20). Based on the testimony of the vocational expert, the ALJ determined that Ms. Bryant could perform the requirements of representative occupations such as a linen room attendant (600 jobs locally, 220,000 nationally), a housekeeper (1,200 job locally, 275,000 nationally), and a document preparer (250 jobs locally, 150,000 nationally). (R. 21).

Therefore, the ALJ concluded that Ms. Bryant had not been under disability, as defined in the Act, from the alleged onset date of June 2, 2006 through the date of denial of disability services. (R. 21).

## IV.  Standard of Review

The function of this Court on review is to leave the findings of fact to the agency and to determine upon the whole record whether the agency's decision is supported by substantial evidence, not to try plaintiff's claim de novo. King v. Califano, 599 F.2d 597, 598 (4th Cir. 1979).  This Court must

uphold the Commissioner's decision if it is supported by substantial evidence and if the ALJ employed the proper legal standards.  42 U.S.C. §§ 405(g), 1383(c)(3) (2001); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).  Substantial evidence "consists of more than a scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).  It is "such relevant evidence as a reasonable mind might accept to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotations omitted).

In reviewing the decision, this Court will not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig, 76 F.3d at 589; Hayes v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  The Commissioner, as fact finder, is responsible for resolving conflicts in the evidence. Snyder v. Ribicoff, 307 F.2d 518, 520 (4th Cir. 1962).  If the Commissioner's findings are supported by substantial evidence, this Court is bound to accept them. Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962).  However, despite deference to the Commissioner's findings of fact, "a factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman, 829 F.2d at 517.  The Court has authority under 42 U.S.C. § 405(g) to affirm, modify,

or reverse the decision of the agency "with or without remanding the case for a rehearing." <u>Melkonyan v. Sullivan</u>, 501 U.S. 89, 98 (1991).

## V. Discussion

Plaintiff makes three arguments on appeal. First, plaintiff argues that the ALJ improperly considered Listings 12.04, 12.06, and 12.08.  Second, plaintiff argues that the ALJ improperly weighed evidence and, thus, erred in finding that plaintiff was not credible.  Third, plaintiff argues that the ALJ did not properly consider her impairments in combination and, additionally, needed an expert to do so.  For the following reasons, this Court rejects plaintiff's arguments.

### A. ALJ properly considered Listings 12.04, 12.06, and 12.08.

Plaintiff first argues that the ALJ failed to perform a proper listings analysis for Listings 12.04 (affective disorders), 12.06 (anxiety disorders), and 12.08 (personality disorders). (ECF 19, 37).  Defendant counters that the relevant evidence does not reflect that plaintiff's impairments meet or medically equal Listings 12.04, 12.06, or 12.08. (ECF 20-2, 13).

As described above, in order to meet Listings 12.04, 12.06, or 12.08, plaintiff must meet either "paragraph A" and "paragraph B" requirements or, under Listings 12.04 and 12.06, "paragraph C" requirements. 20 C.F.R. § 404, Subpart P, Appendix

15

1. The ALJ found that plaintiff did not meet "paragraph B" or "paragraph C" requirements. (R. 14-16). Plaintiff argues that she meets "paragraph A" and "paragraph B" requirements under Listing 12.04, 12.06, and 12.08.[3]

### 1.    The ALJ properly analyzed "paragraph A" requirements

Plaintiff contends that she meets "paragraph A" requirements under Listing 12.04 and that the ALJ erred when she failed to consider plaintiff's major depressive disorder in addition to her bipolar disorder under Listing 12.04, as plaintiff was diagnosed with both bipolar disorder and major depressive disorder by her treating physician. (ECF 19, 38).

Although the notes of plaintiff's treating physician, Dr. Dimitrova, indicate that she suffered from major depressive disorder, the ALJ's failure to include this disorder in her list of severe impairments is not erroneous. See e.g., Ellis v. Astrue, CIV.A. TMD 10-1020M, 2011 WL 5877215 (D. Md. Nov. 22, 2011) (finding that the ALJ's failure to find that Hepatitis C was a severe impairment was not erroneous, despite the fact that the plaintiff had been diagnosed with Hepatitis C); Kenney v. Astrue, No. CBD-10-1506, 2011 WL 5025014 at *5 (D. Md. Oct. 20, 2011) (stating that it is not reversible error to fail to consider a specific severe impairment in the analysis when the

---

[3] Plaintiff does not challenge ALJ's finding that she did not meet "paragraph C" requirements under 12.04 and 12.06.

result would have been the same had the ALJ considered that impairment).  Despite the ALJ's failure to include major depressive disorder as a severe impairment, the ALJ found that plaintiff satisfied step two of the analysis because she had several severe impairments: bipolar disorder, post traumatic stress disorder, generalized anxiety disorder, borderline personality disorder, and substance abuse disorder. (R. 12).

Moreover, Dr. Dimitrova's notes indicate that plaintiff suffered from depression until March 22, 2007.  (R. 242). Thereafter, plaintiff's diagnoses included bipolar disorder but did not include major depressive disorder.  (R. 237, 383, 388, 393, 398, 401). When an individual is diagnosed with bipolar disorder, the individual experiences periods of pathological high and depressed moods, whereas in major depressive disorder, the individual experiences only pathological depressed moods. See DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 345 (Am. Psych. Ass'n, 4th ed. 2000)("Major Depressive Disorder is characterized by one or more Major Depressive Episode […] Bipolar I disorder is characterized by one or more Manic or Mixed Episodes, usually accompanied by Major Depressive Episodes.") A diagnosis of bipolar disorder is inclusive of the symptoms of major depressive disorder and, therefore, the two disorders are mutually exclusive. See id. at 369, 373. (stating that "[i]f Manic, Mixed, or Hypomanic Episodes develop in the course of

Major Depressive Disorder, the diagnosis is changed to Bipolar Disorder" and that "[a] history of Manic, Mixed, or Hypomanic Episode precludes the diagnosis of Major Depressive Disorder"). Consequently, the ALJ's consideration of only bipolar disorder, rather than both bipolar disorder and major depressive disorder, in determining plaintiff's severe impairments, was proper.

### 2. The ALJ properly analyzed "paragraph B" requirements.

Plaintiff additionally disagrees with the ALJ's finding as to "paragraph B" requirements. Plaintiff argues that she has marked, rather than moderate, restrictions or difficulties in social functioning and in maintaining concentration, persistence, or pace. (ECF 19, 38-40, 42-43, 44). Social functioning refers to the individual's "capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals."  20 C.F.R. § 404, Subpart P, Appendix 1.  Concentration, persistence, or pace refers to "the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings."  Id. First, plaintiff argues that she has marked impairments in social functioning due to her avoidance of social situations and interactions and her inability to hold down a job. (ECF 19, 39-40).  Second, plaintiff maintains that that she has marked

difficulties with concentration, persistence, and pace due to her problems with concentration. (ECF 19, 40-41). Plaintiff does not contest the ALJ's finding that she had only moderate restrictions in activities of daily living.

The ALJ's finding that plaintiff has moderate difficulties in social functioning and in persistence, pace, or concentration is supported by substantial evidence.  First, and most important, the ALJ's findings are supported by plaintiff's treating psychiatrist.  In her "Psychiatric Notes," Dr. Dimitrova rated several mental status criteria.  The five-point scale used in the Psychiatric Notes is similar to the five-point scale used to determine claimants' functional limitations.[4]  In the areas that speak to persistence, concentration, or pace on the Psychiatric Note – concentration, disorganized thinking, distractible, racing thoughts – plaintiff never received a score above "moderate" and often received scores of "none" in those areas. (R. 237, 242, 247, 252, 257, 262, 267, 272, 277, 282, 287, 297, 314, 442, 383, 388, 393, 398, 401). In the areas that speak to social functioning – dependent and withdrawn – plaintiff never received a score above "minimal" and often received a score of "none." Id.

---

[4]  The five-point scale used in the psychiatric notes is: none, minimal, mild, moderate, and severe.  (R. 237).  The five-point scale used in the Act to determine functional limitations is: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404, Subpart P, Appendix 1.

Second, the ALJ's findings are supported by the state agency psychologists and the consultative examiner. Dr. Peterson, a state agency psychologist, examined Listing 12.04, 12.06, 12.08, and 12.09. (R. 218).  He indicated that she had diagnoses of major depressive disorder, generalized anxiety disorder, post-traumatic stress disorder and borderline personality disorder. (R. 221, 223).  He assessed her functional limitations and determined that she was moderately impaired in activities of daily living, social functioning, and maintaining concentration, persistence or pace.  (R. 228).  Dr. Sokas, another state agency psychologist, concluded similarly, analyzing the same Listings and concluding that plaintiff was moderately impaired with regard to the "paragraph B" criteria. (R. 332, 342).  Dr. Harkhani, a consultative examiner, did not indicate that plaintiff has marked impairments in "paragraph B" criteria.[5]  Therefore, the ALJ's conclusion that plaintiff had only moderate impairment under "paragraph B" criteria is supported by substantial evidence.

Plaintiff additionally argues that she has experienced repeated episodes of decompensation, each of extended duration, rather than only one or two episodes of decompensation.  (ECF

---

[5] Dr. Harkhani indicated that plaintiff: was "calm and cooperative," exhibited "clear, coherent, and relevant" speech, did not have a thought disorder, hallucinations, delusions, or paranoia, had good insight and judgment, watches TV and reads, drives, goes to public places, performs activities and cares for her needs on an independent basis, and is able to understand and follow instructions (R. 213, 216-17).

19, 40, 43, 44). Plaintiff maintains that an episode of decompensation is not defined only as a hospitalization and that she has had significant changes in her medication that constitute episodes of decompensation.  (ECF 19, 41-42).  She also states that she has a history of psychiatric hospitalizations. (ECF 19, 42).

Plaintiff correctly indicates that episodes of decompensation are not inferred solely from hospitalizations but may also be inferred from increases or changes in medication. See 20 C.F.R. § 404, Subpart P, Appendix 1. ("Episodes of decompensation may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system […]; or other relevant information in the record about the existence, severity, and duration of the episode.").  However, the ALJ's failure to consider changes in plaintiff's medication as episodes of decompensation is supported by substantial evidence. These changes were due to physical reactions and an inability to tolerate medications rather than "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning." 20 C.F.R. § 404, Subpart P, Appendix 1. Plaintiff's treating physician replaced her Lithium prescription with Tegretol due to Lithium's impairment of  plaintiff's

thyroid function, not due to plaintiff's experiencing exacerbations in symptoms. (R. 242)

Plaintiff additionally argues that the ALJ considered only one of her hospitalizations, rather than her "history of many hospitalizations." (R. 41-42). The record indicates that plaintiff has had several hospitalizations. (R. 212, 257). However, the record does not include records of these hospitalizations; the only indication in the record of these past hospitalizations are Dr. Harkhani's statement that "patient has 5 or 6 psychiatric hospitalizations" and Dr. Dimitrova's statement that plaintiff has had "several hospitalizations." (R. 212, 257).

Although the other hospitalizations occurred prior to plaintiff's alleged onset date, the ALJ erred in not considering them. See Bullock v. Astrue, CIV. A. BPG-09-0112, 2010 WL 3060591 *4 FN 5 (D. Md. Aug. 3, 2010) ("It is improper for an ALJ to exclude consideration of medical records dated prior to a claimant's alleged onset date.")(citations, alterations, and quotations omitted). However, plaintiff did not submit records of the past hospitalizations.

In order to meet "paragraph B" requirements, plaintiff must meet at least two of the four following criteria: marked restriction of activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in

maintaining concentration, persistence, or pace, or repeated episodes of decompensation of extended duration. 20 C.F.R. § 404, Subpart P, Appendix 1.  The ALJ arguably should have considered plaintiff's multiple hospitalizations and arguably should have requested additional medical records in light of the long and serious mental health history of plaintiff.[6]  However, the dates of those hospitalization were unknown and, of course, would be of little relevance if distant in time.  In any event, because the ALJ found that plaintiff did not meet the first three criteria under "paragraph B," any error would be harmless. See Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (stating that it is harmless error when the ALJ would have reached the same result regardless of his error); see also Marsh v. Harris, 632 F.2d 296, 300 (4th Cir. 1980) ("Where the ALJ fails in his duty to fully inquire into the issues necessary for adequate development of the record, and such failure is prejudicial to the claimant, the case should be remanded."). The ALJ would have found that plaintiff did not meet "paragraph B" whether or not the ALJ found that plaintiff suffered from more than one or two episodes of decompensation.  See Sullivan v. Zebley, 493 U.S. 521, 530 (1990)("For a claimant to show that

---

[6] "[T]he case law clearly imposes on an ALJ a duty to develop the record, rather than rely on only the evidence submitted by the claimant, *even if the claimant is represented*."  Fleming v. Barnhart, 284 F. Supp. 2d 256, 272 (D. Md. 2003) (emphasis in original).

his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.").

### B. The ALJ properly weighed the evidence and properly considered plaintiff's credibility.

Plaintiff next argues that the ALJ improperly discounted the treating psychiatrist's opinion evidence, failed to consider the consultative examination by Dr. Harkhani, and, consequently, failed to appropriately analyze plaintiff's credibility. (ECF 19, 44).

### 1.   Dr. Dimitrova

Plaintiff makes two criticisms of the ALJ's analysis of Dr. Dimitrova's medical opinions: (1) that the ALJ did not properly analyze Dr. Dimitrova's statement that the plaintiff continued to be unable to work and (2) that the ALJ erred in failing to assign Dr. Dimitrova's evidence controlling weight.  At the outset, the Court notes that the ALJ engaged in an especially exhaustive and thoughtful review of the records of claimant's treater, Dr. Dimitrova.  (R. 12 – 14).

### a) The ALJ properly considered Dr. Dimitrova's statement that plaintiff "continues to not be able to work due to her paranoia and her depression."

Plaintiff argues that the ALJ did not correctly analyze Dr. Dimitrova's statement in a Psychiatric Note that "Patient…

continues to not be able to work due to her paranoia and her depression." (ECF 19, 44); (R. 383). The ALJ stated that "it is not clear whether this statement was made by her physician or was just a reiteration of a statement made by the claimant" and concluded that the patient was less than fully credible. (R. 18).

In determining a claimant's residual functioning capacity, "although [the Commissioner] consider[s] opinions from medical sources . . . the final responsibility for deciding these issues is reserved to the Commissioner." 20 C.F.R. §404.1527(d); see also SSR 96-5p ("[S]ome issues [such as the claimant's RFC and whether or not the claimant meets a Listing] are not medical issues regarding the nature and severity of an individual's impairment(s) but are administrative findings that are dispositive of a case"). Additionally, "treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance." SSR 96-5p.

Moreover, the ALJ's interpretation of the treating psychiatrist's note was supported by substantial evidence. Both state agency consultants indicated that plaintiff has only moderate restrictions, which supports the ALJ's reading of the treating psychiatrist's note. See Danson v. Astrue, CIV.A. TMD-07-1235, 2009 WL 2366295 (D. Md. July 30, 2009) ("A consultative

examination is obtained in order to resolve any conflicts or ambiguities within the record.").

> **b) The ALJ's failure to assign Dr. Dimitrova's opinion controlling weight was harmless error.**

Plaintiff next argues that ALJ erred in giving "great weight" to the non-examining state agency psychologists while giving "little weight" to Dr. Dimitrova. (ECF 19, 45-46).  The plaintiff disagrees with the ALJ that the state agency psychologists' opinions were supported by the medical evidence in the record. (ECF 19, 46).

Plaintiff is correct in asserting that in general, more weight should be given to a treater relationship.  See 20 C.F.R. § 404.1527 (c)(2).  The opinions of treating physicians are generally given a measure of deference by courts due to their "unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone."  20 CFR 404.1527(a)(2).  If a treating source is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record," it is given controlling weight.  Id.  However, "by negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded

significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).

While not entitled to particular deference, nontreating source opinions may still be given substantial weight.  An ALJ is obligated to discuss and weigh each medical source opinion according to the following factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the extent to which the opinion is supported by medical evidence of record; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the treating physician; and; (6) any other factors . . . which tend to support or contradict the opinion.  20 C.F.R. § 404.1527(d)(2); see also Chapman v. Comm'r, No. SAG-11-274, 2012 WL 6681929 (D. Md. 2012); Phillips v. Astrue, No. PWG-10-1475, 2012 WL 1963349 (D. Md. 2012).

In this case, the ALJ should have given the treating source's opinion more weight. Dr. Dimitrova's opinion was consistent with the record, as indicated below.  Moreover, plaintiff had a longstanding treatment relationship with Dr. Dimitrova and had been seen by her many times.[7]

However, although the ALJ erred in failing to give appropriate weight to Dr. Dimitrova's opinion, this error was

---

[7] The record indicates that plaintiff saw Dr. Dimitrova from 2005 until 2008. (R. 314, 320). Dr. Dimitrova completed at least 22 psychiatric assessments of plaintiff. (R. 267, 302, 309, 314, 320, 358, 363, 368, 372, 377, 383, 388, 393, 401, 407, 412, 417, 427, 432, 437, 442).

harmless for several reasons.  The ALJ discussed Dr. Dimitrova's evaluations of the plaintiff, although the ALJ did not assign it controlling weight (R. 18-19); both Drs. Peterson and Sokas discussed Dr. Dimitrova's evaluations in their reports (R. 230, 344); and, finally, Dr. Dimitrova's evaluations are consistent with the other medical evidence of record and support the ALJ's conclusions.

Dr. Dimitrova's treatment notes span from January, 2005 to December, 2008. (R. 314, 320).  The record indicates that Dr. Dimitrova completed four psychiatric assessments of plaintiff in 2005. (R. 302, 309, 314, 358).  In those assessments, Dr. Dimitrova indicated that plaintiff's level of stress was "severe."  Id.  Dr. Dimitrova scored the plaintiff as "moderate" with regards to distractibility, manipulation, and difficulty concentrating.  Id.  She additionally indicated that plaintiff had "mild" depressive symptoms and that plaintiff's anxiety symptoms were either "mild" or "moderate."  Id.  Moreover, she rated plaintiff as minimally impulsive, irritable, and withdrawn.  Id.  Of the four psychiatric assessments, plaintiff's Global Assessment of Functioning ("GAF") score was 40 on three occasions (R. 305, 312, 317) and 50 on one occasion (R. 361). In her treatment notes, Dr. Dimitrova indicated that plaintiff generally responds well to medication and that her mood is stable.  (R. 314, 358)

In 2006, Dr. Dimitrova completed nine psychiatric assessments of plaintiff.  (R. 267, 363, 368, 372, 377, 407, 412, 417, 42).  In those assessments, Dr. Dimitrova indicated that plaintiff's level of stress was "severe."  Id.  She scored plaintiff as being moderately anxious, distractible, manipulative, and as having moderate difficulties in concentration.  Id.  Dr. Dimitrova indicated that plaintiff's depressive symptoms were either "moderate" or "mild."  Id.  Dr. Dimitrova additionally noted that plaintiff was only minimally impulsive, irritable, and withdrawn.  Id.  In all nine psychiatric assessments, Dr. Dimitrova indicated that plaintiff's GAF score was 50. (R. 270, 366, 371, 375, 380, 410, 415, 421, 425).  In her treatment notes, Dr. Dimitrova indicated that plaintiff felt "hopeful" and that her mood was stable and, at times, cheerful (R. 252, 257, 262, 267, 287, 297, 302); Dr. Dimitrova also indicated that plaintiff's mood is improved on medication.  (R. 287, 292).  However, Dr. Dimitrova also indicated that plaintiff sometimes felt "hopeless." (R. 282).

In 2007, Dr. Dimitrova completed six psychiatric assessments of plaintiff.  (R. 383, 388, 427, 432, 437, 442). Dr. Dimitrova scored plaintiff's level of stress as "severe" only once and as "moderate" or "none" for the remainder of the assessments.  Id.  Dr. Dimitrova indicated that plaintiff's levels of anxiety and depression were either "moderate" or

"none." <u>Id.</u> She rated plaintiff's difficulties in
concentrating, manipulation, and distractibility as either
"moderate" or "none." <u>Id.</u> During this time, Dr. Dimitrova gave
plaintiff GAF scores of either 45 or 50. (R. 386, 388, 430, 435,
440). Dr. Dimitrova's treatment notes indicated that plaintiff
generally responded well to medication and that she had a stable
and cheerful mood.(R. 237, 247)

In 2008, Dr. Dimitrova completed three psychiatric
assessments of plaintiff. (R. 320, 393, 401).  In the first two,
Dr. Dimitrova indicated that plaintiff's depressive symptoms
were "mild" and gave her a score of "none" in all other
categories.  (R. 393, 401).  On the final assessment, Dr.
Dimitrova indicated that plaintiff had just left her abusive
husband and scored her as "moderate" in a number of categories,
including: anxious, concentration, depressive, distractible,
impulsive, irritable, and withdrawn. (R. 320). Dr. Dimitrova
gave plaintiff GAF scores of 40, 45, and 50. (R. 323, 396, 405).

Therefore, although the ALJ's failed to accord Dr.
Dimitrova's opinion greater weight, this error was harmless, as
Dr. Dimitrova's evaluations are consistent with both the record
and the ALJ's decision.  <u>See Bautista v. Astrue</u>, CIV. TJS-11-
1651, 2013 WL 664999 (D. Md. Feb. 22, 2013) (stating that it was
harmless error for the ALJ to fail to assign weight to the
opinion evidence of record, as the outcome would not change had

the ALJ assigned weight to the evidence); <u>Morgan v. Barnhart</u>,
142 F. App'x 716, 722-23 (4th Cir. 2005) (stating that "[e]ven
assuming… that this opinion is a medical opinion due special
weight under the treating-physician rule, any error in failing
to credit this opinion was harmless" because the evidence that
the ALJ did adopt did not "materially contradict" the treating
physician's opinion).

### 2.     The ALJ's failure to discuss Dr. Harkhani's opinion was harmless error.

Finally, plaintiff argues that ALJ erred in not considering
Dr. Harkhani's consultative examination.  (ECF 19, 47-49).  The
ALJ did not mention Dr. Harkhani's report in her decision.  This
was error.  <u>See</u> 20 C.F.R. § 404.1527 (c) ("Regardless of its
source, we will evaluate every medical opinion we receive.").
However, the error was harmless. Both Dr. Peterson and Dr. Sokas
considered and discussed Dr. Harkhani's report in their
evaluations and the ALJ subsequently gave "great weight" to Drs.
Peterson and Sokas' evaluations. (R. 230, 344)

Furthermore, Dr. Harkhani's evaluation supports the ALJ's
conclusions and is consistent with the other medical evidence in
the record.  (R. 211-17).  Dr. Harkhani summarized plaintiff's
medical history, stating that plaintiff said that she had
chronic severe depression and bipolar disorder, that she was on
several medications, and had been hospitalized 5 or 6 times.

(R. 211-12). However, he indicated that she did not meet the criteria for bipolar manic symptoms. (R. 213). Her mental status examination was largely benign. Dr. Harkhani stated that plaintiff was calm and cooperative, that her speech was clear, coherent, and relevant, and that her judgment and insight were good. Id. However, he indicated that her mood was anxious, that her affect was sad, and that she was tearful a few times. Id. Dr. Harkhani also indicated that plaintiff drives a car, cares for her own personal needs, does her own shopping, does housecleaning, cooks, reads, and performs activities on an independent basis. (R. 216).

Therefore, the ALJ's failure to consider Dr. Harkhani's evaluation, although error, was harmless. See Corcoran v. Astrue, CIV.SKG-08-913, 2009 WL 3100350 (D. Md. Sept. 22, 2009) (stating that the ALJ's failure to cite an exhibit was harmless error because the ALJ considered "nearly contemporaneous" evidence and that ALJ's failure to cite an assessment was harmless error because it was consistent with an earlier assessment); Garner v. Astrue, CIV. SKG-10-1930, 2011 WL 3758311 (D. Md. Aug. 23, 2011) ("The ALJ did not discuss this medical evidence which he arguably should have done. However, this is harmless error, if error at all, since the evidence is consistent with the other evidence in the record.")

### 3.    Plaintiff's credibility

Plaintiff additionally argues that, had the ALJ accorded Dr. Harkhani and Dr. Dimitrova's opinions the appropriate weight, the ALJ would have found plaintiff credible. (ECF No. 19, 48-49).  However, as the foregoing indicates, the ALJ's failure to properly weigh Dr. Dimitrova's notes and her failure to examine Dr. Harkhani's opinion were harmless error.  The medical evidence in the record supports the ALJ's conclusion. Accordingly, the Court rejects plaintiff's argument that the ALJ improperly evaluated her credibility.

### C. The ALJ properly considered plaintiff's combination of impairments.

Finally, plaintiff contends that the ALJ failed to consider her multiple impairments in combination and that, moreover, an expert was needed to evaluate the complexity of the combination of her mental impairments.  (ECF 19, 49-50).  Defendant counters that the ALJ did consider plaintiff's impairments in combination and that the ALJ's determinations were supported by medical opinions. (ECF 20-2, 24-26).

Plaintiff correctly indicates that 20 C.F.R. § 404.1523 requires that her impairments be considered in combination with each other rather than in isolation.[8]  However, the ALJ's

---

[8] 20 C.F.R. § 404.1523 states that "[i]n determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without

decision makes clear that she considered plaintiff's impairments both singly and in combination.  (R. 14).  First, in determining whether she met "paragraph B" requirements, the ALJ considered plaintiff's impairments in combination.  (R. 14)  The ALJ does not separate out the analysis for Listings 12.04, 12.06, 12.08, and 12.09 but, rather, determined whether, on the whole, plaintiff met "paragraph B" requirements.  (R. 14).  Second, in determining plaintiff's RFC, the ALJ considered plaintiff's multiple impairments, specifically discussing her anxiety and stress levels, her difficulties with interpersonal relationships and paranoia, her mood swings and depressed mood, her trouble sleeping, her panic attacks, and her alcohol use.  (R. 17-19).  See Rawson v. Bowen, 838 F.2d 467 (4th Cir. 1988) (affirming the ALJ's decision when the ALJ concluded, as in this case, that "the combination of [claimant's] impairments do not meet or equal the level of severity described in the Listing of Impairments")(alterations omitted); Johnson v. Astrue, CIV. JKS-10-1527, 2011 WL 5211552 (D. Md. Nov. 1, 2011)(affirming ALJ's decision with regard to a combination of impairments even when the ALJ "outlined and analyzed each impairment separately").

In addition, plaintiff states that an expert was needed in order to evaluate her "myriad mental impairments" due to their

---

regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process."

complexity. (ECF 19, 50).  Plaintiff cites only to 20 C.F.R. §

405.5, the definition of a medical expert, in support of that

contention. (ECF 19, 50).  However, as described above, the ALJ

did rely on medical evidence in making her conclusions and the

medical opinions of record support the ALJ's conclusions; each

medical opinion considered all of plaintiff's multiple

impairments.  (R. 211-217, 218, 237, 332); see Thomas v. Astrue,

CIV.A. CBD-11-2960, 2012 WL 5363448 (D. Md. Oct. 26, 2012)

(affirming the ALJ's finding that claimant's combination of

impairments did not meet or medically equal a Listing when "the

ALJ's conclusion is supported by the medical evidence and

clinical findings").

## VI.  Conclusion

As the Commissioner stated "there is no dispute that Ms.

Bryant has a variety of mental impairments, including bipolar

disorder, PTSD, anxiety, and borderline personality disorder.

(Tr. 12).  At issue is the severity of Ms. Bryant's limitations

resulting from these impairments, since her alleged date of

onset."  (ECF No. 20 – 2, 21).  The Court acknowledges that Ms.

Bryant has and continues to face serious challenges not faced by

many others, and sympathizes with her and her family.  However,

she has not demonstrated disability under the law and

regulations of the Social Security System.  For the foregoing

reasons, the Court hereby DENIES plaintiff's motion for summary

judgment, GRANTS defendant's motion for summary judgment, and

AFFIRMS the decision of the ALJ.

                                    Sincerely yours,

                                    /s/

                                    Susan K. Gauvey
                                    United States Magistrate Judge